Ms. Malloy and the appellate, Ms. Ward from the Appalooks. Good morning.  I am Tara Malloy, representing Appellant's Campaign Legal Center, or CLC, in Democracy 21. CLC and Democracy 21 are challenging the dismissals of three FEC complaints they filed in the 2012 elections, alleging that more than $14 million in campaign contributions were passed through various LLCs and other corporate fronts to conceal the true donors of those funds. In essence, what the three administrative complaints allege is a campaign finance version of money laundering. Unknown donors funneled big contributions to super PACs through shell corporations that engaged in no business in order to hide their identities and evade disclosure. The undisputed facts in these complaints established crystal-clear violations of two key statutory disclosure provisions of NECA. One, its straw-donor provision that prohibits making a contribution in the name of another at 52 U.S.C. 30122, and its political committee registration and reporting requirements. Nevertheless, the commission deadlocked three... Can I pause over that? Do you think both can be filed? Can somebody be in violation of each one, or are these in the alternative? The complaints presented both allegations as potential violations. However, if I understand your question, the FEC's Office of General Counsel did analyze our... I'm asking your view. Can someone be, or some entity be in violation of both? Or is it as... I understand what the General Counsel says, which is you're one or the other. That seems reasonable. I didn't take you to have a different position, but I was wondering the way you presented it, whether you meant to say that they could be both. I think that at the time the complaints were filed, it was unclear whether these LLCs or corporate entities were straw donors. That is, whether they had no independence, and whether they were simply pass-throughs, or whether there may be a continuing course of activity that may be campaign-related, such that they would be closer to a political committee, a group that had as its major purpose to influence elections. But your view now is it's one or the other? Correct. Okay. Thank you. Can I ask you to just go right to what I think is a hard issue here, which is the commission's argument that our decision in Crewe holds that the decision here that is before us is not reviewable, that it's covered by equity chaining. So, the anarchist brief says, well, that's completely inconsistent with our prior case law. But you don't say that in your brief. You say, you say, you say, in order to decide this case, we don't need to say that, and we can interpret Crewe, quote, in harmony with our previous decisions, namely Orlowski, Chamber of Commerce, all those cases. How do you do that? Correct. Yeah. Yes. How do you do that? That's exactly what we argued. I mean, how do we do that? Yes. Crewe explicitly noted that although it deemed FEC dismissals within the Heckler world, it explicitly noted that if the FEC dismissal relied upon interpretations of law, that it was still reviewable. We believe this is such a decision here. Yeah, but the Heckler, the out that Heckler leaves, footnote four in Heckler, that says it's reviewable if the commission, if the agency says, well, we don't have jurisdiction, that is, we're without power to act. That's not what the commission said here. Correct. But the commission... I don't, I mean, I don't know that Crewe can go beyond that, can it? The commission... It can't expand footnote four. So... Well, to back up, I think that Crewe has to be understood on its facts. There, the court was... How about understood as consistent with Heckler? As consistent with Heckler? Well, the, we also noted in our brief that if Crewe was expanded in the way that the FEC urges to mean that an FEC dismissal of an administrative complaint duly filed according to 30109 was not subject to judicial review simply because it mentioned the words discretion, perhaps one discretionary factor, and thus immunized all the interpretations of law in that decision from any judicial check, that that would be contrary to Aiken's, both this circuit's decision and the Supreme Court's decision. And that it's really only that if Crewe is confined to its facts, where the court was reviewing, in its eyes, at least in the majority's eyes, a agency decision that was an exercise of its prosecutorial discretion, and again, in the panel majority's eyes, a dismissal based entirely upon discretionary factors, then that was not reviewable. And I don't know that we would contest that, even though the Supreme Court's decision in Aiken's makes clear that a FEC dismissal of an administrative complaint under 30109, 30109 makes that action reviewable. However, if the agency were to give only unreviewable reasons for that dismissal, because it was part of an exercise of prosecutorial discretion, then those reasons would not necessarily become reviewable. Where does our case law say that? Where does our... Where does our prior case law before Crewe make that distinction? We've never said that. Well, the prior case law to Crewe was that FEC dismissal... That you have to state reasons, and they're subject to review. And Olasky explains the two circumstances that can serve as a basis for review. I mean, I didn't understand whether he would just hedge you because he felt you were stuck with Crewe, or what? But what Judge Tatel is asking, do you honestly believe that Crewe is consistent with the established law of the circuit, pre-Crewe? Can't possibly be. I believe that Crewe is based upon a faulty premise. I'm sorry, you said what? I feel... Well, if you're asking me whether... I just didn't hear you. If you ask me whether I think that Crewe is consistent with the law of the circuit in the Supreme Court, I would say that... No, it's not. Crewe is... No, but what do you think? I thought you said it was a faulty premise, right? The faulty premise is that Crewe stated that FEC dismissals of administrative complaints filed under 30109 was an exercise of discretion. It was an act committed entirely to the FEC's discretion, and therefore unreviewable. This, however, flies in the face of the Supreme Court's decision in Aikens, which found expressly the opposite. It said that although agency enforcement's decisions have been traditionally committed to agency discretion, and they said explicitly, we deal here with a statute that explicitly indicates the contrary. So that the FEC action, that is a dismissal, is reviewable. It may be that if indeed the reasons are only ones of agency resources, that those reasons are not reviewable. I don't see... No, that's a different question. They're reviewable. Yeah. But you use Olaski. It's either inconsistent with law or arbitrary and capricious. If it's not inconsistent with law, then the agency's going to win. And it's not arbitrary and capricious if it looks like nothing more than the agency's saying, on balance, we're not going to proceed. That's not arbitrary and capricious. Correct. But insofar as Crewe is read in a way that's simply limited to its facts. Yeah, I know what that means. But, I mean, you may have been stuck. Is that what you're saying? You felt stuck? Well, yes. I think that we felt that Crewe governed, although its discussion about mixed decisions, where the FEC rested upon both prosecutorial discretion, grounds, and interpretations of law. There, it said that under Heckler, you couldn't carve out reviewable legal determinations from an otherwise discretionary decision. That's assuming Heckler is applicable in the FECA context. Exactly. But that, see, that was not the facts before the Crewe panel. They were looking at a decision that they deemed entirely based on prosecutorial discretion. So really, I think one could read that section as an aside. It was dicta. It was not necessary to the holding of Crewe. And that would be a way to disregard the more problematic applications of Crewe to FEC dismissals that clearly are resting on interpretations of law. Doesn't the agency itself assume that every exercise of, every decision, when the agency decides not to say a 3-3 grade, not to go forward, is always an exercise of prosecutorial discretion. It has nothing to do with reviewability. They always assume it's an exercise of prosecutorial. That's what their regs say. But that has nothing to do with our precedent. Our precedent says, no matter what, reasons have to be given, and they're subject to review. Correct. Okay. So this is a different position than you took in your brief. Well, no. I think we said that if Crewe was interpreted to mean that a FEC dismissal based upon legal interpretations was not reviewable, then it was contrary to the decisions of the circuit and the Supreme Court. We said that our understanding of Crewe's facts was that it was reviewing a FEC dismissal entirely based upon discretionary considerations. And under those circumstances, you said it was not reviewable. And under those circumstances, those reasons given for the dismissal may very well be unreviewable. For instance, if you're not taking a different position. Well, I was asked whether I think that Crewe is inconsistent with the decisions of the circuit and the Supreme Court, and I do. It's interesting because I read your brief as being very careful not to adopt the view of the amicus. Is that not right? Excuse me, not to? Not to adopt the view of the amicus brief. The amicus brief asks us to evoke Sierra Club and declare that we won't follow Crewe. I read your brief as carefully not taking that position. I think that our brief said that Crewe could be read in a manner consistent with this circuit's precedents and with the Supreme Court. And that is because if Crewe, again, is limited to its facts, I don't think it necessarily conflicts. Okay, then what do we do? Let's just assume that we don't agree with you. Since you haven't asked us to ignore Crewe, and the amicus brief can't make an argument you don't, what do we do? You haven't asked us to invoke Sierra Club. I think that what we've asked the court to do is to review the statement provided by the controlling commissioners for error of law. Well, but we can't do that if Crewe says what it says. That is a feckless clause. And if you have not asked us to ignore Crewe under Sierra Club, then what do we do? My understanding of Crewe is that it's explicitly noted that FEC dismissals based upon conclusions of law were reviewable, and I would cite that. No, but my whole question is based on the assumption that that may not be right under Heckler. Unless it's a jurisdictional, we don't have authority. Heckler and our decision, Crowley, seem to be saying Heckler is Heckler. And unless it falls under footnote four, we don't have any jurisdiction. We can't review it. Well, as I said, the Crewe panel expressly stated that if the commission declines to bring an enforcement action on the basis of its interpretation of FECA, commission's decision is subject to judicial review to determine whether it's contrary to law. So whether consistent or inconsistent with Heckler, that was the position of the Crewe court. And we believe that if indeed that exception were applied to this case, that the FEC's decision would still be reviewable even under Crewe. I don't disagree that Crewe's premise that FEC dismissals are entirely committed to agency discretion is inconsistent with the Supreme Court's holding in Aikens that decides it's contrary. Let me ask you a quick question about the merits. I was originally, and maybe still am, struck by your argument that, you know, the commission said there's due process and notice problems here. And you respond to that by saying, well, wait a minute. The statute's totally clear, right? It prohibits straw contributions and it defines persons as corporations. What's not clear here, right? That's your argument. Commission responded by saying, well, we have a whole series of decisions in other contexts where we treat corporate contributions as corporate money, even though we know who the donor is. And that that might, that could conceivably be confusing. And since this is the first time we've articulated this theory, we're just not going to apply it here. Why isn't that a pretty good argument? Particularly since our deference on issues like this is so heavy, right? I mean, in DCC we said our deference at a point like this is, quote, Our answer to that was that the FEC certainly cites a great deal of guidance and it cites some of its rules, but none of its authority is on point. The rules were all the default rules for attributing corporate contributions to either the entity or an owner. And the default rules, we said by definition, do not apply in situations where Right, but they acknowledge that. But they say, well, it could still have confused people. People could still be confused about that. Well, as we argue in the brief, we don't think that this guidance actually confuses the statute. Yeah, but that's not our standard, right? We have to say it's an abuse of discretion for the commission to have said that people could be confused. How would we say that? Well, if one actually looks at the guidance, none of it involved either 301.22, nor did it involve fact patterns like the blatant violations alleged here of 301.22. In those different MER proceedings or enforcement decisions, the commission was looking at whether an LLC or a closely held corporation that oftentimes loaned money to a candidate or the owner had violated the corporate contribution ban. However, in almost all of those cases, the money was business revenue derived from the corporation. So there was some question about whether it was the owner's money or the corporation's. Here we have a completely different fact pattern where there's really no dispute that all of the money flowing through these LLCs and corporations came from the outside, came from an outside donor. So even if you were to read this guidance as somehow affecting 301.22, the facts are just not on all fours with this current situation. And what's more, if indeed the question is whether or not respondents are reasonably confused, then I think it's important to look at whether the record indicates that the respondents were reasonably confused. And one thing that's striking is that although respondents to all three complaints filed responses in the administrative proceedings, not one of them raised concerns about notice or claimed any confusion about the applicability of 301.22. In fact, they didn't contest the factual allegations. They simply said that the allegations of the complaints weren't sufficient. That was how they rested their defense. Okay. Question? No. Okay. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. I'm Haven Ward on behalf of the Federal Election Commission. Commission on Hope is dead on here and squarely applies to the decision that the controlling commissioners made in this case. So I was going to ask you, you think it's dead on. The crude opinion says the disposition is controlled by Heckler v. Cheney. That's what it says. Okay. This case is not controlled by Heckler v. Cheney. Supreme Court made it clear in the FEC situation Heckler does not embrace the presumption of reviewability. It's absolutely clear, not even interesting. The crude decision cites Heckler, cites Aikens, along with the Heckler line of authority. You're smiling because you know it makes no sense because it doesn't fit the Heckler line of authority. It's an opposite. We have a long line of authority starting with then-Judge Ginsburg's case, including Velosky, including common cause, all of which say together that in this kind of a circumstance, the agency must issue reasons for the disposition, and those reasons are subject to review. There's no presumption of non-reviewability. In fact, one of the cases says we start with the assumption that this is an exercise of prosecutorial discretion. It doesn't matter. They still got to issue reasons, and those reasons are subject for review. And Velosky says there are two bases, inconsistent with law, arbitrary and capricious. That is the body of law, as a circuit judge, that I look at. That is the circuit law. I can't completely explain in my mind what Crewe is saying, but the one thing Crewe does say, and you're embracing it, and I'll give you an opportunity to explain why you think you're right, Crewe says Heckler v. Cheney controls. Maybe it did in that case. I don't have to comment on that. It does not in this case. It absolutely does not. Heckler v. Cheney is not the framework that we look to to decide what to do with these cases. So now what is your answer to that? The DCC case that you pointed to did find that a split vote dismissal or dismissal resulting of an inability to determine one way or the other not to proceed, that itself was not an exercise of prosecutorial discretion. DCC did not go as far as to say that if the actual merits of the decision was for the court, which, as you noted, they had not provided a statement explaining their rationale, DCC did not address a circumstance for the actual. Did you read Common Cause? Yeah. Common Cause bills on DCCA takes out the problem of whether the action is consistent or inconsistent with the general counsel, and it says reasons have to be given and explains why. That's a good thing under this statute. And the two of those cases say explicitly Heckler is not controlling. DCCA says that. Heckler is not controlling, as the Supreme Court had already said. It's not the proper framework. And the problem I have is the case you want to rely on, and maybe you have some other reasons that are good, but the case you want to rely on says it is controlled by Heckler v. Cheney. This case is not controlled by Heckler v. Cheney, absolutely not controlled by Heckler v. Cheney. And all of the law of the circuit that I look to, and I can look to it because Sierra Club says I can, makes it clear that the frame is you've got to give reasons, and they are reviewable. And then Awoski tells us the two terms in which we review. So DCC expressly disclaimed reaching the question of whether or not if the actual merits of the decision were based on prosecution. Counsel, take Common Cause down. You keep going to DCCC. DCCA was the first step. Common Cause is very clear in saying that it is building on DCCA and that you must give reasons and they are subject to review. That doesn't mean you lose on review, but you're subject to review. The notion you're advancing is if you invoke, if the three who opt not to proceed invoke the words exercise of prosecutorial discretion, that's the end of it and the court is not in play? That's absurd. That's not a position. That's nothing in the case law to support that except maybe. That is not the FCC's position. Okay, so tell me a position that squares with the case law. Indulge me, if you will. A position that squares with the case law up to Crewe, which I'm confused about because Crewe says it rests on Heckler, and I don't buy that for a half a second because we've disclaimed that and the Supreme Court has disclaimed that. So as a Court of Appeals judge, I can say it's not in play. That's wrong. So now how can you win with that out of the equation? Crewe recognized that dismissals based on a no reason to believe or a finding of no violation would be judicially reviewable. So it would still be required for the controlling group or the full commission to set forth an explanation of what the bases are for why they're exercising their prosecutorial discretion. It is not the commission's position that you just say the words, without more prosecutorial discretion, and then that is a judicially unreviewable decision. What makes it judicially unreviewable? Why are you insisting that this is judicially unreviewable when the law that supports it, at least up until its last opinion, made it clear that it absolutely is reviewable? The terms of a review, as Olosky suggests, are variable depending on the circumstances and what we face, but there's no question. And indeed, even in DCCA, Judge Ginsburg said, you know, depending upon what we're looking at, it might be easy for the agency to win in some circumstances on review, but we all assume there's review. You're smiling, you understand. But tell me how you win. Let's assume the assumption about who is wrong, this notion that there are circumstances under the FECA where there's no review. How can you win? Is there a way for you to prevail in this case? Absolutely, Your Honor. The decision here was not an abuse of discretion. So your argument is there was no abuse. Now tell us why there's no abuse of discretion. That in the wake of Citizens United, where corporate entities were, for the first time ever, permitted to make contributions, that for the first time ever there were super PACs, where there were unlimited contributions to independent expenditure-only political committees, and where the commission had prior precedent dealing with how you determine how to attribute a contribution to the corporation versus the single member of the LOC or a closely held corporation. If you were looking to that and commission regulations for guidance, it was not so clear that it is an abuse of discretion for the controlling commissioners to have determined to exercise their prosecutorial discretion here, to not proceed, in these cases of first impression. Well, you know, this is amusing because, as I recall, I may be wrong on this, my recollection is your regulation suggests that this is all an exercise of prosecutorial discretion. It has nothing to do with reviewability. I'm sorry, I'm not quite following. In other words, you're right to say in these 3-3 situations, you're exercising prosecutorial discretion to decide not to proceed, 3-3, 4-1, whatever. They're all exercises of prosecutorial discretion. No, the commission is not making that argument. That question was square on decided in DCC. Right. And the court there said those types of dismissals are not in and of themselves an exercise of prosecutorial discretion. That avoids judicial review. Correct. There's nothing in DCCA that says any of those avoid judicial review. None. So... There are suggestions by Judge Ginsburg that depending upon, if you're looking at 6-0 as opposed to 2-1, 3-3, 4-2, it is more likely that the agency is in a stronger as opposed to a weaker position, but she never suggested for the court that it was unreviewable. The court expressly disclaimed reaching that issue, reaching whether or not, if the actual statement of reasons explaining the decision is based on prosecutorial discretion. And it was very careful to do so. It twice limited what it was saying. It said presumably that type of decision would be reviewable. Right. Or assuming arguendo that that type of decision is reviewable then. You keep forgetting common cause, which built on DCCA. Common cause didn't hedge in that question. Common cause is clear that it's reviewable. That these decisions are reviewable, whether you win or lose is a different issue, but there's no question that they're reviewable. There was no exercise of prosecutorial discretion that was before the court and in the common cause. What I'm trying to suggest to you is your own regulations suggest that going through this whole thing is an exercise of prosecutorial discretion when you decide not to proceed. But as Judge Griffith said, in voicing concerns about Crewe, that's kind of a so what point because we have added to that and made it very clear whether you think you're exercising prosecutorial discretion or not. You have to give reasons and we can review them. The FEC agrees that we have to give reasons. The FEC is not taking the position that just the sole fact that there is a split vote dismissal is itself an exercise of prosecutorial discretion. Our position is that Commission on Hope very clearly says that when the controlling group says that the basis of its dismissal are prosecutorial discretion, then that type of a decision is not judicially reviewable. And that makes sense to you? Under established case law? I mean, come on. We're friends. I know you're questioning that now. Does that make sense to you? Under our case law? That's not what the case law says. You don't have to acknowledge whether you're friends or not. You can be my new best friend. How about that? There is a distinction between whether or not the court could have gone the other way in Crewe versus whether or not that holding was so contrary to actual binding holdings, not dicta, of prior cases such that this Court has the capability of disregarding it. And the decisions that you make... Didn't even cite the prior holdings. And Orlosky is not dicta. Orlosky is not dicta. The language in Orlosky is not dicta. The Orlosky case also did not deal with a case of prosecutorial discretion. It didn't at all address that situation in any way. It didn't purport to be even considering it. In Orlosky, the court was saying, when you have a reviewable decision, here's how we're going to conduct our review of that decision. But it didn't purport to say one way or another that in cases where the Commission has expressly invoked its prosecutorial discretion as the basis for not going forward, that that was usually reviewable. It's not the Commission. They're three people. That is correct. That's right. That's why your regs read the way they are, because you assume in your regs, at least implicitly, that it's only when you have more than three that you can even claim prosecutorial discretion. But we don't even have to get there, because the case law assumes. I just want to know, are you very comfortable in saying, look, Judge Edgars, whatever, I understand your quibbles, but we can win no matter what, no matter how you recruit. We can win because using Orlosky and using those tests, we meet them. If we're reviewable, we meet them. Are you comfortable with that argument? Absolutely, Your Honor. And that's your argument there is abuse of discretion? Yes. Your argument is not abuse of discretion. Not, not. Sorry. I wasn't trying to trap you. Everybody's right. I want to ask you about just one sentence in Crewe. Tell me what you think it means. Crewe cites Heckler and Aikens, and then it says, quote, if the Commission declines to bring an enforcement action on the basis of its interpretation of FECA, the Commission's decision is subject to judicial review to determine whether it is contrary to law. What do you think that sentence means? That, the Court was drawing a distinction between the circumstances that were, as an example, what were the circumstances in the Aikens case before the Supreme Court. There were two claims at issue in the underlying administrative matter that ended up coming before the Court. The first was that there was a corporate contribution ban violation, and there the Commission did find probable cause, but determined to exercise their prosecutorial discretion and dismiss. For the other claim, the political committee claim, the Commission found an affirmative no reason to believe. So they affirmatively found that no violation occurred. And that is the line that the Crewe case is referring to, because when you don't have a violation, or when the Commission believes that there is no violation, then you squarely can apply FECA, because there are none of the discretionary considerations that you have when you are exercising prudential review that are particularly difficult, as the Court noted, in the Cheney context, to assess. And why isn't that this case? Hmm? Why isn't that this case? In this case? Yeah. The Commission exercised its discretion not to prosecute because of constitutional concerns. Notice, due process. Those are classically reviewable decisions. There was no determination here that there was no reason to believe. In fact, the controlling group recognized that there were circumstances that may lend themselves to pursuing a straw donor enforcement matter. That is distinct from actually finding no reason to believe or no probable cause because there is no violation. And that was the type of claim that was in front of the Supreme Court in Aikens. Does that distinction make sense? No. So the Commission has no authority to proceed under this provision of the statute unless it makes a no reason to believe determination. Isn't that right? That's correct. Okay, so this decision has to rest on a determination by the three that there's, quote, no reason to believe that a violation occurred, right? No, absolutely not. No? There are several instances where there's several things that can happen after an administrative complaint is filed. The primary three are you find reason to believe, you find no reason to believe, or you dismiss in an exercise of prosecutorial discretion. Those are the three ways that primarily that the Commission will go forward with the matter. But when you're exercising prosecutorial discretion, you are not necessarily determining one way or the other. And here they define to do that. Where is that in the statute? Where does the statute give the authority to, beyond, if it's not willing to make if it isn't making a no reason to believe determination, where does it get the authority to not proceed for other reasons? So if you're looking, I apologize, I can't remember the exact provision. Nobody can remember these numbers. If I may. Try. Here we go. It recognizes in 30109A1 that the Commission has the right to dismiss prior to making a determination whether or not there's reason to believe. The restriction is that if they are going to make a reason to believe. What provision are you reading from? 30109A1. A1. And it's a long paragraph, but towards the end it says, for the Commission conducts any vote on the complaint other than a vote to dismiss, any person, any respondent essentially, has the opportunity to demonstrate that no action should be taken against the person. So FECA is expressly recognizing the Commission's ability to dismiss a matter without making, first making a determination whether or not there is or is not reason to believe. The limits on this authority is if they are going to proceed in an enforcement matter, then they have certain boxes that they need to tick before they're going to go to court and seek to enforce an enforcement matter. But these are prefiling requirements. There's nothing in here that expressly limits their authority to determine to dismiss. Without making a reason to believe determination, which they did not in this case, for example. So on the statute alone, I think the problem is the statute doesn't really tell us what to do in a case of 3-3s. And so some of our case law overlays on that. But on the statute alone, it says in 8-2 that in order to go forward, that is to make an investigation, there has to be an affirmative vote of 4. So if there's not an affirmative vote of 4, which is here, you can't go forward. It doesn't say you dismiss, it just says you can't go forward. So I suppose the Commission could just do nothing. Yeah, it could. And FECA has a provision where if the decision is taking too long, so to speak, then they can come into court. So that kicks you over into 8, I think, right? Yeah, 8-A, I believe. The failure to act. Yes. Actually, I think it's 8-C. The dismissal complaint or the failure to act is contrary to law. Okay, thank you. Further questions? No. Okay, we'll hear from our other friend, if our other friend has any time. Two minutes. Two minutes. Thank you, Your Honors. Thank you. Hello. Two things. One, there seems to be some confusion as to what the vote in this case was. The commissioners here did not vote directly on whether to dismiss as a matter of prosecutorial discretion. They could do so, and if they had four votes, then the matter would be dismissed as a matter of prosecutorial discretion. Instead, they voted on whether to find reason to believe that FICA 301.22 was violated, and the three commissioners here found no reason to believe that it had been violated. That is the operative vote. If you look at the administrative record materials, that is what they decided here. They did not attempt to find no reason to believe. They did not attempt to simply make no determination. Instead, they found no reason to believe. I want to also address opposing counsel's statement that they based their decision on the preference not to enforce against matters of first impression, that they believe that because of Citizens United, this was the first time you would see corporate donations, and, therefore, they would prefer to regulate conservatively and not go after these respondents. That was only the beginning of their analysis. They then stated that even on the fact that these cases, applying 301.22, a clear statute to clear violations would violate Respondent's due process and fair notice rights. It would violate Respondent's constitutional rights. So it wasn't a matter of enforcement priorities or enforcement preferences. They believed that going forward here would violate the due process rights of the Respondents. Furthermore, they said that applying 301.22 as written would violate the First Amendment rights of corporations. They said it would hollow out the rights to do so without the intent that they devised. That's nothing further. Both of these were errors of law and contrary to law. This should be reversed. Okay. There being no further questions, we'll take the matter under submission and make call on the next case.
judges: Garland, Tatel, Edwards